UNITED STATES of America, Appellant,

v.

O. M. RAINWATER, Appellee.

No. 17338.

United States Court of Appeals Eighth Circuit.

Nov. 19, 1963.

See, also, D.C., 30 F.R.D. 512.

Hugh Nugent, Atty., Dept. of Justice, Washington, D. C., for appellant. Ramsey Clark, Asst. Atty. Gen., Lands Division, Dept. of Justice, Washington, D. C., Charles M. Conway, U. S. Atty., Fort Smith, Ark., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., and S. Bil-

lingsley Hill, Atty., Lands Division, Dept. of Justice, Washington, D. C., for appellant.

James K. Young, Russellville, Ark., and Ray Blair, Paris, Ark., and Robert J. White, Russellville, Ark., for appellee.

Before SANBORN and MATTHES, Circuit Judges, and ROBINSON, District Judge.

MATTHES, Circuit Judge.

In this proceeding the United States condemned for use in the construction and operation of the Dardanelle Lock & Dam on the Arkansas River, fee simple title to the surface estate of certain land owned by appellee, O. M. Rainwater, and subordinated the mineral estate to the Government's right to flood the land.

Acting under Rule 71A(h) F.R.Civ.P., the district court appointed Commissioners to determine the issue of compensation. The Commission conducted a hearing on September 22, 1962, heard evidence on the compensation issue, and filed its report on October 1. The report, in narrative form, shows that appellee and his tenant testified that the fair market value of the condemned tract was $5,000 and $5,925, respectively; that another witness was of the opinion that the fair market value was $4,937.50; that the staff appraiser for the Corps of Engineers testified that in his opinion the land had a value of $2,800, and the minerals had a value of $100; and that a real estate broker in Russellville, Arkansas, fixed the value of the land at $2,330 and the minerals at $50. The report further shows that on consideration of all of the evidence, the Commission determined that "the fair market value is $2,800", that the value of the remainder, being minerals only, is $100—"a difference of $2,700"—and that this $2,700 difference is "just compensation."

On October 10, 1962, appellee filed exceptions in the district court to the Commission's report, alleging, in essence, that the award is inadequate and contrary to the preponderance of the evidence.

A hearing was not held on the exceptions, but on November 20, 1962, the court disposed of them by memorandum in the form of a letter to the parties. For the purpose of this opinion it is sufficient to observe that the court, at the outset, recognized that the landowner was complaining "on the ground that the award made by the Commission is inadequate and is greatly less than the actual amount of the damage caused by the taking of the tract." After noting that there was a range in the evidence before the Commissioners from a low of $140 an acre to a high of $250 per acre, the court stated that it "is convinced that the market value of the land on the date of the taking was in excess of the compensation awarded, and that the findings of fact by the Commission are clearly erroneous. * * * The court is not unmindful of the experience and competency of the members of the Commission, but believes that they are subject to the usual human frailties, and that they failed in this instance to award just compensation and is convinced upon a consideration of the facts reflected by the testimony and shown by the report that just compensation should be fixed at $175 an acre, or $3,456.25." The court deducted the value of the minerals, $100, and entered an order or judgment in favor of appellee in the sum of $3,356.25.

The Government recognizes that the dollar amount involved on this appeal ($656.25) is so small that ordinarily it would not request a review of the district court's action. It insists, however, that this case presents the issue of the extent of the district court's power to modify the findings of a commission appointed in a condemnation case—said to be an issue of great importance to the Government and landowners throughout the nation.

The Government contends (1) that in condemnation proceedings where the issue of compensation is submitted to a Commission, we, on appeal, should review the Commission's findings to determine whether they were clearly erroneous in order to decide whether the district court erred in rejecting them as clearly errone-

ous; (2) that applying the proper standards the lower court could not have concluded that the Commission's findings were clearly erroneous, and (3) that even if the district court correctly determined that the Commission's award was clearly erroneous, it erred in making its own award.

Rule 71A(h) F.R.Civ.P., relating to "Condemnation of Property" authorizes the appointment of a Commission and provides that the Commission shall have the powers of a master provided in subdivision (c) of Rule 53 F.R.Civ.P.; that proceedings before the Commission shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53, and that the Commission's findings and report "shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53." The latter, Rule 53(e) (2) provides:

"In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. * * * The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

The Government argues that there is no substantial difference in the legal effect to be accorded the findings of a Rule 71A(h) commission on the one hand and the findings of a referee in bankruptcy or the findings of a master appointed by the court on the other. From this premise it asserts that we should adopt the same rule which we applied in O'Rieley v. Endicott-Johnson Corporation, 8 Cir., 297 F.2d 1; Gross v. Fidelity & Deposit Company of Maryland, 8 Cir., 302 F.2d 338 (bankruptcy proceedings), and in Sanitary Farm Dairies v. Gammel, 8 Cir., 195 F.2d 106 (involving a master's findings) and hold that the clearly erroneous standard is to be applied to the

findings of the commission and not to the findings of the district court.[1]

The Government further claims that the rule it contends for is not in harmony with the holdings of the Fourth and Fifth Circuits in United States v. Twin City Power Company, 4 Cir., 248 F.2d 108, 112, cert. denied, 356 U.S. 918, 78 S.Ct. 702, 2 L.Ed.2d 714; United States v. Twin City Power Company of Georgia, 5 Cir., 253 F.2d 197, 201-204.

In Twin City Power Company, supra, apparently the progenitor of subsequent decisions by the Fourth and Fifth Circuits, Judge Parker, speaking for the court, stated:

"We review the District Judge, not the commissioners; and under Rule 52(a) we may not set aside his findings unless they are clearly erroneous. When he has set aside the findings of a master or commissioners, we must give consideration to the fact that they saw and heard the witnesses and that he did not, and we must pass upon his findings with this in mind; but, unless we can then say that his findings are clearly erroneous when viewed in this light, we must accept them." 248 F.2d at 112.
It will be observed that in arriving at its conclusion in the Twin City Power Company case, the Fourth Circuit cited with approval United States v. Waymire, 10 Cir., 202 F.2d 550. Of interest here is this pronouncement in Waymire, 202 F.2d at 553-554:

"Upon review, it was the duty of the court to accept the awards of the commission unless they were clearly erroneous in whole or in part because based upon a substantial error in the proceedings, because based upon a misapplication of the controlling law, because unsupported by substantial evidence, or because contrary to the clear weight of all the evidence. And while it was incumbent upon the court to proceed with

---

1. This court has long been opposed to the upsetting of the findings of a referee in bankruptcy based upon the credibility of witnesses and weight of evidence. See

and compare, Rasmussen v. Gresly, 8 Cir., 77 F.2d 252 (1935), and Yutterman v. Sternberg, 8 Cir., 86 F.2d 321, 111 A.L.R. 736 (1936).

due regard for these general principles, if on the whole record the court was clearly convinced that in fixing just compensation for the property taken the commission acted arbitrarily and without proper regard for the evidence, or that the awards were unsupported by any substantial evidence, or that they were against the clear weight of all the evidence, it was the duty of the court to modify them, reject them in whole or in part, receive further evidence, or recommit the matter to the commission with instructions."

We also take note of the expression of the Fourth Circuit in the case of United States v. Certain Interests in Property, etc., 296 F.2d 264, at p. 269:

"The rule governing these cases can be simply stated: The District Judge has the authority and duty to review the findings of the commission, and such findings must be accepted by him unless he considers them clearly erroneous. Upon review of the District Court's findings and judgment, *we must first determine whether or not the District Judge erred in accepting or rejecting the findings of the commission.* * * * Thus, where the evidence before the commission is in virtual equilibrium and the preponderance for one side or the other is slight, the commission's findings could not be rejected by the District Court *merely because the judge preferred the opposite line of evidence, which, if accepted, would support other findings; in such a situation where the commission's findings are based on substantial, though conflicting, testimony, we would be compelled to hold that the District Court erred if the commission's findings were rejected.*" (Emphasis supplied).

Adhering to the foregoing teaching, the same court, in the recent case of United States v. Carroll, 304 F.2d 300, stated:

"In criticizing the rule of this Circuit governing a District Court's power and authority to review and modify a commission's findings and report, the Government has overlooked that aspect of the rule which permits modification of commission determinations *only* if the District Judge *correctly* finds such determinations *clearly erroneous.* If he correctly makes such finding, the judge may then adopt one of two alternatives—remand to the commissioners with proper instructions or, if there is evidence in the record before him from which a correct ultimate decision can be made and which does not involve a determination upon conflicting testimony of questions of fact (as distinguished from a determination of an issue the resolution of which depends on informed opinion and judgment evidence), make the necessary determinations himself and enter final judgment rather than remand the case for further proceedings before the commission." 304 F.2d at 303, 304.

From our analysis of the opinions in the foregoing cases we believe it is debatable whether the rule promulgated therein is as drastic as the Government claims it to be. Suffice to say that it is at least doubtful whether under such rule the findings of the district court are so completely insulated that the court of appeals is precluded from giving consideration to the Commission's findings of fact in determining whether the district court properly held such findings were clearly erroneous.

In any event, we have concluded that it is unnecessary for decision and disposition of this case to adopt or reject the rule or standard we applied in the O'Rieley, Gross and Sanitary Farm Dairies cases, supra. We are of the view that by applying either this standard or the standard adopted by the Fourth and Fifth Circuits there is no sound basis for sustaining the district court's action. As we have seen, the

landowner challenged the Commission's findings principally on the ground that the amount awarded was inadequate. There was no claim that the Commission acted arbitrarily, misapplied the law, or that there was no support in the evidence for its findings. More importantly, the court's action, without a hearing, was not premised on any valid legal basis, —rather it is clear from the district judge's memorandum that he rejected the findings of fact of the Commission because he disagreed with the judgment of the Commissioners and because he believed that the value of the land was greater than the amount fixed by the Commission. Although the Commission's findings and award were supported by substantial evidence, the court chose to substitute his judgment for the judgment of the members of the Commission. This he was not permitted to do. Cf. Dunsdon v. Federal Land Bank of St. Paul, 8 Cir., 137 F.2d 84 (1943), where the district court had modified an order of the conciliation commissioner in a proceeding under the Bankruptcy Act. What Judge Johnsen stated there is apropos here:

"The record now before us presents a situation where the district judge appears simply to have differed with the judgment of the conciliation commissioner on the evidence of the witnesses, and where, without receiving any further evidence, he has substituted his judgment on the original record for that of the conciliation commissioner.

\*   \*   \*   \*   \*   \*

"The district judge, where he chooses simply to review the record made before the conciliation commissioner, without himself receiving further evidence, must give due regard to the greater opportunity which the conciliation commissioner has had to judge of the credibility of the witnesses. Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c; General Orders in Bankruptcy, Order 47, 11 U.S.C.A. following section 53.

He should not attempt, where he does not receive further evidence, to set aside a finding of the conciliation commissioner, unless it is based upon a material error in the proceedings or a mistaken view of the controlling law, or is unsupported by any substantial evidence, or is contrary to the clear weight of all the evidence. Cf. Ætna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1, 5." 137 F.2d at 86.

On this record we are compelled to hold that the court erred in refusing to adopt the Commission's findings. Accordingly, the judgment is reversed and the cause is remanded with directions to enter judgment in favor of the landowner for the amount awarded by the Commission.

ROBINSON, District Judge (concurring in part and dissenting in part).

I am in full accord with and concur in the opinion of the majority in this case with the exception of that portion thereof which directs that the Trial Court enter judgment in favor of the landowner in the amount awarded by the Commission.

I am convinced that the case, at least on the record before us, tested by either the rules announced and applied in O'Rieley v. Endicott-Johnson Corporation, 8 Cir., 297 F.2d 1; Gross v. Fidelity & Deposit Company of Maryland, 8 Cir., 302 F.2d 338, or Sanitary Farm Dairies v. Gammel, 8 Cir., 195 F.2d 106, or by the rules announced and applied in the cases in the Fourth, Fifth and Tenth Circuits, cited in the majority opinion, must be reversed and remanded.

The record here indicates that the able and experienced Trial Judge, after receiving the report of the Commissioners, and upon exceptions being taken thereto by the Appellee, concluded and found that the report submitted by the Commissioners was clearly erroneous and without more modified the said report by increasing the award. This was done without benefit of a transcript of the testimony taken before the Commis-

sioners, without holding a hearing or without receiving additional evidence. This, as the majority opinion holds, he may not do regardless of how convinced he may be that the award is inadequate.

In a somewhat analogous situation involving the report of a Conciliation Commissioner this Court, in an opinion by Judge Johnsen, (now Chief Judge), said:

> "The district judge, where he chooses simply to review the record made before the conciliation commissioner, without himself receiving further evidence must give due regard to the greater opportunity which the conciliation commissioner has had to judge of the credibility of the witnesses. * * * He should not attempt, where he does not receive further evidence, to set aside a finding of the conciliation commissioner, unless it is based upon a material error in the proceedings or a mistaken view of the controlling law, or is unsupported by any substantial evidence, or is contrary to the clear weight of all the evidence. * * *" Dunsdon v. Federal Land Bank of St. Paul, 137 F.2d at page 86.

At this juncture, however, I am persuaded that the District Court's power of review has not been exhausted in view of Rule 53(e) (II) Federal Rules of Civil Procedure which provides in part:

> " * * * The court after hearing may adopt the report or may modify it or may reject it in whole or in part *or may receive further evidence* or may recommit it with instructions." (Emphasis supplied.)

Unlike this Court the Trial Court upon review of the report of the Commissioners is not limited to the bare record but may, among other things, hold a hear-

ing or receive or require additional evidence in connection with said review.

Apposite here is the following in Dunsdon v. Federal Land Bank of St. Paul, supra, 137 F.2d at page 87:

> " * * * situations may exist where, in the interest of justice, he (District Judge) may soundly exercise a discretion to receive or require additional evidence in connection with a review of a conciliation commissioner's order, and determine from the entire record thus before him whether a correct result has been reached. * * * Whether oral evidence shall be received or required in the proceedings before him is, of course, a matter for his sound discretion and is not a matter of right to the parties."

I think the foregoing reasoning is peculiarly applicable to the situation here present.

Accordingly, I would hold that the District Court still has authority to take further action in accordance with the principles enunciated in Equitable Life Assur. Soc. of United States v. Carmody, 131 F.2d 318 (C.A. 8 1943) and Rait v. Federal Land Bank of St. Paul, 135 F.2d 447 (C.A. 8 1943). See also Dunsdon v. Federal Land Bank of St. Paul, supra.

To do otherwise, it would seem to me, is to foreclose the Trial Court from exercising a clear right to proceed further under the provisions of the above quoted rule, if it concludes in the exercise of a sound discretion that to do so would be in the interest and furtherance of justice. In the process it might explain and demonstrate, if it can, why in its opinion the report of the Commissioners' was clearly erroneous.

Early termination of litigation is always desirable but it is not necessarily synonymous with justice.